on behalf of the people of the state of Illinois. All right. Thank you, Counsel. We will allow the normal amount of time for argument. Please understand we've read everything. This is essentially a one-issue case. So keep your remarks focused to our questions and focus on your best arguments. And Mr. Union, you may proceed. Good afternoon, Your Honors. May it please the Court? My name is Chan Yu, and I represent Michael Johnson. And per this Court's order, I will be addressing the precedents set forth in People v. Escort as it applies to reasonable doubt and also touch upon the other crimes evidence. People v. Escort is controlling here and requires reversal of Johnson's convictions. Well, keep in mind, People v. Escort is not controlling on us even though some of us were involved in it because we're not required to file an Illinois bail court ruling. We can be convinced that we were wrong. Well, it's controlling on the lower courts. Sure. Well, this case is similar to People v. Escort, and that's because the DNA evidence in this case or the only evidence that connects the defendant to the victim in this case, just like as was the case in Escort, is DNA evidence recovered from the victim's anus and vagina, which only shows that the defendant had sex with the victim within 72 hours of that. It does not indicate whether that sex was consensual. It does not indicate whether that sex occurred near the time of her death. And it certainly does not indicate whether the defendant is responsible for her death. And further, you also have DNA recovered from an oral swab from the victim's mouth, which indicates that there was three male DNA profiles recovered, one of which Johnson could be excluded completely. So with this evidence, we don't even know if Johnson was the last person to have sexual contact with the victim in this case. But we do have a couple things that we didn't have in Escort. Obviously, every case falls on its facts. Here we have the other crimes evidence that the judge did admit. The judge was very precise in terms of what he admitted and didn't admit. But we have some other crimes evidence here as well, don't we? Yes. So you have this other crimes evidence, but there was also other crimes evidence in Escort. And in deciding that case, this court did not actually address the other crimes evidence. But even if we were to consider it here, it doesn't really prove anything in terms of what happened to the victim in this case. And that's because we just don't know. There are not enough facts here to show in regards to the events that led to the victims death. We know that she was murdered. Her body was found strangled in an abandoned building. But we don't know whether she was murdered during a sexual assault, whether she was murdered after consensual sex, or whether it's entirely possible that the killer didn't even have sex with her. Counsel, can I ask you this? Should there be some concern that in this case versus Escort, the Escort case there were a number of different types of persons' DNA found. Sure. This, in the anus portion of the victim, was only the DNA of the defendant, right? Yes, that's correct. There was other DNA in oral and vaginal. His was the only DNA in the anus, right? Yes. And the fact that there were mucosal tears around the anus, that's another distinction in this case. So it can suggest that it was rough, it was a little bit more brutal than sex can be otherwise, that there might have been these tears from that. I know the testimony was it could be from that or it could be from constipation or whatever that was the testimony. But does that make this case a little different than Escort? No, because as you said, Your Honor, the mucosal tears, we don't know what the exact cause of them are. And also, we don't know when they occurred either. She was alive when they occurred, we know that much. Excuse me? The doc said that she was alive when they occurred, we know that. Yeah, so she was alive, but again, we don't know whether that occurred during the time of her death. Do we know the number of them? In terms of the number, I don't believe that the medical examiner testified to that trial. But in terms of the timing, the temporal aspect, we don't know when the mucosal tears occurred and we also don't know what caused them. But if we were to assume that it was a result of anal sex, then we don't know when that sex occurred. I'm saying, could that be a reasonable inference that the jury made from that testimony that those tears are a result of fairly rough sex or strong sex or whatever you want to call it? The inference could be made that it resulted from sex. But it can't be speculation to infer that it was with sex with Johnson. His was the only DNA in the anus is my point, so that connection. His DNA was the only DNA recovered from the anus, but that doesn't mean that he was the one that necessarily caused those tears. And even if he did, again, we don't know whether those mucosal tears were caused around the time of her death. That would be completely speculative to say, oh, these mucosal tears occurred during those last few hours of her life when she was murdered. We don't know that. Evidence doesn't show that. So it could be. It could be a result of anal sex, but not could be. Well, I mean, any of those scenarios are just as likely as possible as the other. So for that reason, it's a it is speculative to say that Johnson was the last person to have sex with the victim and also that he caused or that he caused mucosal tears. Those facts are just unknown here. So, again, this case is like escort. You have the only evidence that confirms a link between the defendant and the victim is that DNA evidence. And again, in escort, this court held that when that is the only nexus between the defendant and the victim. And it would be pure speculation to conclude that the defendant and the victim had sexual relations before her death or that he was the last person to see her alive. But since guilt cannot burst out speculation, this court reversed the defendant's conviction in escort. And the same result is appropriate here where you don't have any other evidence linking this defendant to the victim besides that DNA. And that only shows that they had sex within 72 hours of their death. It doesn't tell us exactly when and certainly doesn't tell us whether he is responsible for her death. And just another point about the other crimes evidence. We can't compare this what happened to this victim to that other crimes evidence because we just don't have any facts as to what exactly occurred here. It's certainly possible that she could have been sexually assaulted and murdered. But the evidence doesn't confirm that. It's also possible that she had consensual sex and then was murdered. And again, as I stated before, it's also entirely possible that the killer solicited her for sex, she took her clothes off, and then he killed her without having sex. Those are all equally possible scenarios. And for that reason, any conclusion that Johnson is the killer in this case or he murdered the victim is speculative just as was in escort. So for that reason, Your Honors, if you have no other questions, I would request that you reverse Johnson's convictions for murder and sexual assault. Thank you. May I discuss with you the DNA? This forensic scientist, Lisa Falara, she stated that the swab indicated the presence of three male DNA profiles. Yes. A major contributor and two minor ones. She stated that Johnson was ruled out as a major contributor but could not be ruled out as one of the minor contributors. She stated, however, that 68% of men in a random population also could not be excluded. So does that give you any additional comments to make on the DNA? Just that it shows that other men had sexual contact with the victim in this case. It confirms that at least one, that major contributor, Johnson, can be completely excluded. So it indicates that at least one other man had sexual contact with the victim within 72 hours of her death. So because of that evidence, it confirms that the defendant... Are we talking about vaginal or anal or are we talking about oral here? Oral. Oral, yeah. But the testimony was that DNA survives in a woman's body for about 72 hours. And because you have this male profile, because of one major male profile from which Johnson could be completely excluded, it can't be even concluded that Johnson was the last person to have sex with the victim. Again, that's also another thing that brings this case back to escort. That makes it similar to escort, where you have multiple men, DNA profiles recovered from the victim's body. So... Counsel, is there a reason... Now, this is a jury case, right? Yes. Oh, sorry. Yeah, it was. Let me answer your question. Okay, yes. Is it reasonable to conclude that one of the persons who had oral sex with this woman might not have been the person that eventually strangled her and killed her because she was found without her clothing except for a pair of socks on? Well, just because she was found naked doesn't mean that the last person to have sex with her anally and vaginally was the person to kill her. How many different DNA was found in her mouth? Okay, so let's break this down. You have the major contributor, which, again, Johnson could be excluded from. I just want to know, in her mouth, on the oral exam, how many different person's DNA were found in her mouth? There's three. So one major contributor, two minor contributors. Right, so three in the mouth. Three. Right. And, again, one, where Johnson could be excluded, and two, which Johnson couldn't be excluded, but also 68% of men in a random population couldn't be excluded as well. So just because she was found naked, that doesn't mean that the person who last saw her had vaginal and anal sex with her because we just don't know when these DNA samples or DNA profiles were deposited in the body. We have no other evidence as to what happened to this victim in this case. Yes, she was found naked, but there's no indication that, besides this DNA, that she had sex before she was murdered. You have, I think, the fact that she was found naked, that only shows that the person who killed her at least solicited her for sex. It doesn't mean that that person necessarily killed her. Again, these are all inferences, all have the same likelihood. There's no evidence that shows that one is more likely than the other, and that's the problem here, and that is what the problem was in S Court. You have just all of these possibilities, and our system of laws requires us to prove beyond a reasonable doubt. And in S Court, where you had virtually very similar evidence, this Court held that that wasn't enough to sustain the State's burden. And I would urge the Court to follow this Court's decision in S Court and grant the same relief in this case. Thank you, Your Honors. Thank you, Mr. Yu. Mr. Alexander. Good afternoon, Your Honors. Assistant State's Attorney, Joseph Alexander, on behalf of the people of the State of Illinois. In order for this case to fit within the bounds of S Court, this Court has to do a few things. This Court has to focus solely on DNA. This Court has to ignore pieces of evidence that were presented at trial. This Court has to ignore reasonable inferences from that evidence. And essentially, this Court has to ignore the Jackson Standard, which requires that all evidence at this point be considered in the light most favorable to the people, and all reasonable inferences from that evidence have to be made in the people's favor. When we look at this evidence, under the Jackson Standard, it was more than sufficient to support defendants' conviction for aggravated criminal sexual assault and murder. Contrary to what counsel argues, there was more than just DNA. And in this case, we have DNA propensity evidence, the evidence, other kinds of evidence that was used as propensity for intent and for identity. We also have reasonable inferences that flow from that evidence. We have common sense and human experience, which this Court does not have to dispense with when reviewing this evidence. What do we know about this victim? What do we know about her circumstances? We know that she was a sex worker. We know that she was seen going to a building used by sex workers to engage in sex. We know that she was found in that building. We know that she was found naked, on her back, legs spread. We know that DNA evidence was found in her vagina and in her anus. Human experience, common sense, reasonable inference. She went to that building to have intercourse. What else do we know from this evidence? We know that she was strangled. We know that she didn't leave that building. We know that she didn't get up off of her back. That's based on testimony from the medical examiner that talked about morbidity and the pool of blood in her back. We know that there was a sexual assault. How do we know that? Well, she was strangled to death. We also know that because there were injuries to her anus. Who is more likely to have done that? And we know that answer because we have defendant's DNA in her vagina and in her anus. The only DNA found in her vagina and in her anus. And we also know it's a defendant because we know defendant has done this before. This propensity evidence came in and it was properly admitted. We learned from SIA how defendant operates. He approaches prostitutes. He goes to secluded areas with them. When he's there, what did CF tell us he did? He threw her down, down-and-topped her, strangled her. She passed out. When she awoke, her clothes were off and defendant had ejaculated inside of her. He had left her in an alley in the cold like garbage. What do we know about L.B.? She was in this building on her back naked. Strangled to death in garbage. The only DNA found in her vagina and in her anus was defendant's. And we also know that he was a person that did it because of a consciousness of guilt. When confronted with a picture of L.B., this defendant said, never knew her, never seen her, never had sex with her. Even when confronted with his DNA and given an opportunity to explain how his DNA was, why his DNA was found in this victim, he continued to claim that he didn't do it. Now, in the appeal, he argues that he was ashamed because he was with a prostitute. And as we learned in our brief, even though this wasn't brought out of trial, it is in the record and the court can't consider it only for whatever limited purpose it has. But he had previously admitted to having sex with prostitutes, sex workers. So, Mr. Alexander, this may be the first case I've seen here where the state argues that because the defendant denied committing the crime, okay, that that's extra evidence that he actually did commit the crime. And I'm having difficulty seeing how that puts its thumb on the scale. Well, it's not simply that evidence, Your Honor. We're looking at this evidence in conjunction. And we're looking at this as evidence as what a reasonable person would do, what a reasonable innocent person would do in that situation. When this defendant was told, he asked the officers, why am I here? They said, we're investigating a murder. Who was murdered? They tell him. He asked to see a picture. And when he sees this picture, he has no reaction. And that's common with this defendant that's not seen yet. Because when she confronted him, again, no reaction. In that situation, it defies common sense and human experience that a reasonable person who is in a police station just told that he was part of this murder investigation would sit there and say, I never knew her, even in the face of DNA. A reasonable innocent person would say, look, yes, I had sex with her. She was a sex worker. But I didn't kill her. Defendant didn't say that. Defendant said, not my DNA, told the officers, and I quote, you tripping. But he couldn't, he can't refute what was found. And he can't refute that he was the person that did it based on what we know from that propensity evidence, that other crimes evidence that was brought in for propensity and for identity and intent. So when we look at all of this evidence under the Jackson standard, it was more than sufficient. When we look at all of those reasonable inferences that come from that evidence, she went to this building to engage in sex. And she was stripped naked and had sex. And the person that she had sex with, the only DNA found in her vagina and anus was from defendant. Yes, there was other DNA found in her mouth, but as counsel said, that could have been from 72 hours prior. And what do we know about this victim? She was a sex worker. So that's not uncommon. And all of these possibilities that could have happened, or these different interpretations, or these different inferences, first of all, just because something is possible doesn't mean it's probable. And second, that's the reasonable hypothesis of innocence that this court has long since abandoned. And furthermore, if there are competing inferences, those inferences are best left to the trial of fact. And on appeal, if there are competing inferences, and those inferences are reasonable, this court has to make the most reasonable inference in the people's favor and accept that. Not other inferences. The court doesn't have to raise these possibilities and elevate it to reasonable doubt. The trial of fact heard this evidence, made reasonable inferences, and came to the reasonable conclusion that it was the defendant who committed the sexual assault and its murder. And under the proper standard, that conclusion, that the evidence that was presented, was not so unreasonable, so improbable, so unsatisfactory that no rational trial of fact could find this defendant guilty. When we look at this evidence, it was more than sufficient. And we ask that this court affirm the defendant's conviction. If there are no further questions, for the reasons stated here and stated in my brief, once again, we ask that you affirm the defendant's conviction. Thank you. Thank you. Mr. Yun, rebuttal. So first of all, it's not only that each possible inference that can be drawn from the evidence is possible. They're all just as speculative as one another. Again, based on the evidence that we have here, and again, which is very similar to what we have in S court, you only know that sex occurred between the defendant, Johnson, and the victim in this case. You don't know when it occurred. And you also have other male DNA found from the body, which shows that other men also had sexual contact with her within 72 hours. So, again, the conclusion that Johnson is responsible is speculative. It's just as speculative as one of the other men having committed this offense. Counsel, is it reasonable to think a woman laying on her back, unclothed, the guy who killed her, she had just given oral sex to, the clothes off, laying on her back, is that reasonable? Well, we just don't have any facts to know what happened to this victim. What's common sense, though? I think that the only inference that can really be drawn from this bare bones evidence that we have, just the naked body found in an abandoned building, is that probably the person who killed her did solicit her for sex, but did he have oral sex with her? Did he have vaginal and anal sex with her? Those answers are unknowing. Did he even have sex with her? Maybe she took off her clothes and then he killed her. Those all are just as speculative as concluding that Johnson had killed her. And, again, the other crimes evidence, the fact that they were both sex workers, that is true. But remember that the victim in that story was also a sex worker who was also strangled. So those facts by themselves are completely unremarkable. We don't know what happened to the victim in this case except that she was strangled. We don't know whether she had sex during that time. And if she had sex, we don't know if it was consensual or not, and then she was killed. Again, these are all unanswered questions. And to conclude that one conclusion is better than the other is there's just not enough facts here to support that, as was the case in Escort. So, again, it's not that we're changing the standard. Even in the light most favorable to the state, as was the case in Escort, again, a 2017 case, guilt cannot rest on speculation. And here guilt has rested on speculation, and that's why Johnson's convictions must be reversed. If Your Honors have no other questions, that's all I have. Thank you. Thank you very much. The case will be taken under advisement and court will stand adjourned. Thank you.